IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARTHA ANJELICA ROMERO, *et al.*, § § Plaintiffs, § § v. § § CITY OF GRAPEVINE, *et al.*, § § Defendants. § | Civil Action No. 3:15-CV-03101-N |

# ORDER

This Order addresses Defendants City of Grapevine (the "City"), Eddie Salame, and Robert Clark's motion to dismiss [23]. The Court denies the motion in part and grants it in part.

## I. POLICE SHOOTING ON THE HIGHWAY

This case arises from the police shooting death of Ruben Garcia-Villalpando. According to the allegations of the First Amended Complaint, on February 20, 2015, Clark, an officer of the Grapevine Police Department, pursued Garcia-Villalpando's vehicle from a parking lot in Grapevine, Texas, to the 2500 block of State Highway 121 in Euless, Texas. *See* Pls.' First Am. Compl. ¶ 6 [17]. The chase ended when Garcia-Villalpando pulled over on the side of the road. *Id.* Clark instructed Garcia-Villalpando to extend his hands out the window of the vehicle, and Garcia-Villalpando did so. *Id.* Clark continued to scream and curse at Garcia-Villalpando. *Id.* Garcia-Villalpando exited the vehicle with his hands in the air and faced Clark. *Id.* ¶ 7. He placed his hands behind his head and interlaced his fingers.

ORDER – PAGE 1

*Id.* ¶ 8. He asked Clark, "Are you going to kill me?" *Id.* ¶ 9. Garcia-Villalpando then walked towards Clark, and Clark fatally shot him. *Id.* Garcia-Villalpando never lowered his hands, never made any verbal threats to Clark, and was unarmed at the time of the shooting. *Id.* ¶¶ 7, 9. After shooting Garcia-Villalpando, Clark did not provide any medical attention. *Id.* ¶ 29. Garcia-Villalpando died hours later at a local hospital. *Id.*

Clark's employment history suggests that he had difficulty finding a job as a police officer. Clark did work for an unstated period of time for the Dallas-Fort Worth Airport ("DFW") Police Department, but in October 2013, he resigned "with indications that he would not have passed an oral test to be hired permanently." *Id.* ¶ 12. The DFW Police Department apparently disciplined Clark on three separate occasions – once for misuse of police authority – during his tenure. *Id.* After his resignation, Clark applied for jobs with the Addison Police Department and the Tarrant County Community College ("TCCC") Police Department. *Id.* ¶ 14. Both departments rejected his applications. *Id.* In his application to the TCCC Police Department, Clark replied "Yes" to the question, "If necessary, could you take a human life in the course and scope of performing your duties as a police officer?" *Id.* He explained:

> This job is like my time spent in the military. If defending the innocent requires me to take the life of another to protect people from imminent threats, I have no problem doing so. It comes with the job and if you can not answer that question before applying, you dont need to be a Cop.

*Id.* Immediately prior to his employment with the Grapevine Police Department, Clark worked as a security guard at a Target in Euless, Texas. *Id.* ¶ 15. He had only four hours of tactical firearms training. *Id.*

ORDER – PAGE 2

Clark's employment history also shows that he was discharged from the Navy for unknown reasons. *Id.* ¶ 13. Clark's discharge papers list "erroneous entry" as the reason for his discharge. *Id.* The Board of Corrections allegedly changed the official reason for his discharge at some point. *Id.* Clark represented to prospective employers that the Navy discharged him due to a "false diagnosis of asthma." *Id.*

Plaintiffs Martha Anjelica Romero,[1] Maria Estela Villalpando, and Ruben Garcia Diaz (collectively, "Plaintiffs") bring claims under 42 U.S.C. § 1983 against the City, Clark, and Salame for violation of Garcia-Villalpando's Fourth and Fourteenth Amendment rights. Plaintiffs base their claims on Clark's use of deadly force and his failure to provide medical treatment to Garcia-Villalpando. Plaintiffs also allege that the City and Salame, the Grapevine Police Department Chief, failed to train officers in the use of deadly force and the provision of medical care to gunshot victims, and inadequately screened Clark prior to hiring him. Plaintiffs further claim the City, Clark, and Salame conspired to deprive Garcia-Villalpando of his constitutional rights in violation of 42 U.S.C. § 1985. Lastly, Plaintiffs assert causes of action under the Texas wrongful death and survival statutes, Tex. Civ. Prac. & Rem. Code §§ 71.002, 71.021, and seek punitive damages and attorney's fees.

The City, Clark, and Salame now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Plaintiffs' claims.

---

[1]Romero brings this action individually and as the representative of the Estate of Ruben Garcia-Villalpando and as next friend for minors Eduardo Garcia, Keila Garcia, and Abdiel Garcia.

## II. THE RELEVANT LEGAL STANDARDS

### A. The Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within

certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### *B. The Qualified Immunity Standard*

In addition to the Rule 12(b)(6) standard of dismissal, the Court must also consider the standard for asserting qualified immunity. "Qualified immunity is a defense available to public officials performing discretionary functions ' . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

should have known.'" *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To resolve a public official's qualified immunity claim, a court must consider two factors. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.* The second inquiry is critical: unless the official violated a clearly established constitutional right, qualified immunity applies. *Pearson*, 555 U.S. at 231. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 235.

### III. THE COURT DISMISSES SOME OF PLAINTIFFS' CLAIMS

#### A. Section 1983 Claim Against Clark

Plaintiffs bring a claim under 42 U.S.C. § 1983 against Clark based on his alleged use of excessive force and his indifference to the medical needs of Garcia-Villalpando. Clark

contends that he is entitled to qualified immunity because neither of these actions violated Garcia-Villalpando's constitutional rights.

To state a claim for indifference to medical needs, Plaintiffs must demonstrate that Clark "acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000). "'Deliberate indifference' requires that the official have *subjective* knowledge of the risk of harm." *Id.* Plaintiffs did not respond to Clark's arguments in favor of dismissal of the section 1983 claim premised on indifference to Garcia-Villalpando's medical needs. Because the allegations of the First Amended Complaint do not show that Clark intended to cause Garcia-Villalpando harm by failing to address his medical needs, the Court dismisses this aspect of the section 1983 claim against Clark.

To state a claim for excessive force, Plaintiffs must show that Garcia-Villalpando sustained "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (internal quotation marks and citation omitted). The allegations of the First Amended Complaint do not suggest Garcia-Villalpando posed an immediate threat to the safety of Clark at the time of the shooting, or that he was actively resisting or attempting to evade arrest by resuming the chase. Under these alleged facts, the use of deadly force was clearly excessive to the need and objectively unreasonable. Moreover, Garcia-Villalpando's Fourth Amendment right was clearly established at the time of the shooting. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985)

(holding that a police officer may not use deadly force to seize an unarmed felony suspect who poses no immediate threat to officer or others, even if the suspect is fleeing). Plaintiffs' allegations do not indicate that Clark is entitled to qualified immunity from the excessive force claim.

Accordingly, the Court grants the motion to dismiss as to Plaintiffs' section 1983 claim based on indifference to Garcia-Villalpando's medical needs. The Court denies the motion as to the excessive force claim against Clark.

### B. Section 1983 Claim Against the City and Salame

Plaintiffs assert section 1983 claims against the City and Salame[2] based on their failure to train police officers in the use of deadly force and the provision of medical care to gunshot victims. Plaintiffs also assert section 1983 claims based on the City and Salame's inadequate screening of Clark.

To state a claim for failure to train or supervise, Plaintiffs must allege that: "(1) [the City's] training policy procedures were inadequate, (2) [the City] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [Garcia-Villalpando's injuries]." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Under the second element, a plaintiff must show that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the

---

[2]Because Plaintiffs sue Salame in his official capacity, the Court treats Plaintiffs' section 1983 claim against Salame as against the City. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (quotation marks and citation omitted)).

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Plaintiffs do not state a plausible claim for failure to train officers on the use of deadly force or the provision of medical care. Plaintiffs allege that Clark had minimal training on the use of tactical weapons, and that the City did not provide him any additional training. However, the First Amended Complaint contains no allegations regarding what the City's current policy regarding such training is, or how the additional training would have prevented the alleged deprivation of Garcia-Villalpando's constitutional rights. The allegations also fail to establish that there was an obvious need for additional training. *Cf. Brown v. Bryan Cty., Okla.*, 219 F.3d 450, 462 (5th Cir. 2000) (finding defendant acted with deliberate indifference by failing to train officer with "exuberant and reckless background" and excessive number of take-down arrests). The medical training claim similarly lacks allegations regarding the City's policies and how they led to Garcia-Villalpando's death. Accordingly, the Court dismisses Plaintiffs' failure to train claim against the City and Salame.

To hold the City and Salame liable for a single hiring decision, Plaintiffs must show that Clark was highly likely to use deadly force in a constitutionally impermissible manner. *Board of Cty. Com'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 412 (1997). "The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* In this instance, the only allegation regarding Clark's

background that might support a finding of inadequate screening is that the DFW Police Department disciplined Clark for misuse of police authority before his resignation. This allegation is insufficient to establish the strong connection necessary to state a plausible claim for inadequate screening.

Plaintiffs' allegations do not state facially plausible section 1983 claims against the City and Salame. Accordingly, the Court dismisses these claims.

### C. Section 1985 Conspiracy Claims

In their First Amended Complaint, Plaintiffs bring conspiracy claims under 42 U.S.C. § 1985 against the City, Salame, and Clark. Plaintiffs did not respond to the City, Salame, and Clark's arguments in favor of dismissing these claims. To state a claim for conspiracy under section 1985, Plaintiffs must show "(1) there was an agreement among individuals to commit a deprivation [of constitutional rights], and (2) that an actual deprivation occurred." *Jabary v. City of Allen*, 547 Fed. App'x 600, 610 (5th Cir. 2013). Because Plaintiffs plead no facts regarding the alleged agreement between the City, Salame, and Clark, the Court grants the motion to dismiss the section 1985 claims.

### D. Claims Under Survival and Wrongful Death Statute

Plaintiffs bring claims as survivors and statutory beneficiaries under Texas's wrongful death and survival statutes. TEX. CIV. PRAC. & REM. CODE §§ 71.002, 71.021. Although Plaintiffs do not specify their theories of recovery under these statutes, the Court assumes Plaintiffs bring claims in the nature of tort, and particularly, intentional tort.

"If a suit is filed under [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* § 101.106(e). Here, the City moves to dismiss the tort claims against Salame and Clark pursuant to section 101.106(e). Plaintiffs did not respond to the City's motion under this section. The Court grants the City's request and dismisses the tort claims against Salame and Clark.

The Court also dismisses the tort claims against the City. "Under the common-law doctrine of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act waives immunity." *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998). The Texas Tort Claims Act does not waive sovereign immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort." TEX. CIV. PRAC. & REM. CODE § 101.057(2). Plaintiffs did not respond to the City's assertion of sovereign immunity. The Court determines that the City is entitled to sovereign immunity from Plaintiffs' tort claims.

The Court grants the motion to dismiss Plaintiffs' claims under the survival and wrongful death statutes.

### *E. Request for Punitive Damages*

Plaintiffs seek an award of punitive damages against the City. Plaintiffs did not respond to the City's arguments in favor of dismissal of this request. Because the Court dismisses all claims against the City, the issue of punitive damages is moot.[3]

### CONCLUSION

The Court dismisses Plaintiffs' section 1983 claim against Clark based on indifference to Garcia-Villalpando's medical needs. The Court dismisses the section 1983 claims against the City and Salame. The Court dismisses the section 1985 claims and the wrongful death and survival claims against the City, Salame, and Clark. The Court denies the rest of the motion to dismiss.

Signed May 2, 2016.

_____
David C. Godbey
United States District Judge

---

[3] Even if the section 1983 claim against the City survived, municipalities are not liable for punitive damages based on a section 1983 claim. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).