IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARTHA ANJELICA ROMERO, *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> CITY OF GRAPEVINE, *et al.*, § <br> § <br> Defendants. § | Civil Action No. 3:15-CV-03101-N |

# ORDER

This Order addresses Defendant Robert Clark's motion for summary judgment [35]. Because Clark is entitled to qualified immunity on the remaining claim for excessive force, the Court grants the motion.

## I. POLICE SHOOTING ON THE HIGHWAY

This case arises from the police shooting death of Ruben Garcia-Villalpando. According to the evidence on the record, on February 20, 2015, Clark, an officer of the Grapevine Police Department, responded to a burglar alarm of a commercial building. App. to Mot. for Summ. J. Ex. 4 ("Clark Dec."), ¶ 6 [37-D]. After checking the front of the building on foot, Clark drove to the back of the building, where he saw Garcia-Villalpando's car. Clark Dec. ¶ 8; *see also* App. to Mot. for Summ. J. Ex. E ("in-car video recording"), 6:28:48–6:28:59 [37-E]. Garcia-Villalpando's vehicle began to move and Clark turned on his overhead emergency lights. Clark Dec. ¶ 9; in-car video recording at 6:29:00–6:29:12. Clark then used the police vehicle's siren after receiving no response from the vehicle. Clark

Dec. ¶ 9; in-car video recording at 6:29:12–6:29:19. Garcia-Villalpando left the parking lot, ran a stop sign, and entered the highway. Clark Dec. ¶ 9; in-car video recording at 6:29:19–6:29:40. Clark pursued Garcia-Villalpando's vehicle, who was driving at a high rate of speed and weaving in and out of traffic, as well as driving in the shoulder, from the parking lot in Grapevine, Texas, to the 2500 block of State Highway 121 in Euless, Texas. *See* Pls.' First Am. Compl. ¶ 6 [17]; *see also* in-car video recording at 6:29:28–6:31:25. The chase ended when Garcia-Villalpando pulled over on the right side of the road on a two lane exit ramp. In-car video recording at 6:31:36. Clark instructed Garcia-Villalpando to extend his hands out the window of the vehicle, and Garcia-Villalpando did so. *Id.* at 6:31:38.

Clark continued to yell instructions and curse at Garcia-Villalpando while waiting for backup. *Id.* at 6:31:55–6:35:03. Clark repeatedly told Garcia-Villalpando to stay in the car and keep his hands up and out of the car. *Id.* at 6:31:55–6:32:39. Garcia-Villalpando opened his door, and Clark instructed him to "stay right there." *Id.* at 6:32:09–12. Instead, Garcia-Villalpando moved his hands back inside the vehicle several times and eventually exited the vehicle with his hands in the air and faced Clark, despite Clark's instructions to the contrary. *Id.* at 6:32:15–6:32:44. Garcia-Villalpando placed his hands behind his head and interlaced his fingers. *Id.* at 6:33:22. Clark repeatedly instructed Garcia-Villalpando to keep his hands up and stay where he was after he exited the vehicle. *Id.* at 6:32:43–6:32:50. Garcia-Villalpando told Clark something to the effect of "are you going to shoot me?" or "kill me." *Id.* at 6:33:55. Garcia-Villalpando, who was wearing a baseball cap, then put his hands on his head and turned back toward his car. *Id.* at 6:33:59–6:34:02. Garcia-Villalpando then

told Clark he would walk toward him. *Id.* at 6:34:10. Clark told him to stay where he was with his hands up. *Id.* at 6:34:14–6:34:18. Garcia-Villalpando placed his hands back on his head and told Clark again to kill him. *Id.* at 6:34:16–6:34:18. Garcia-Villalpando then walked towards Clark, while Clark told him repeatedly to "stand right there," and Clark shot him twice. *Id.* at 6:34:23–6:35:03. Clark continued to tell Garcia-Villalpando to "get your hands where I can see them." *Id.* at 6:35:12–6:35:24. Garcia-Villalpando was unarmed at the time of the shooting. Pls.' First Am. Compl. ¶¶ 7, 9. Garcia-Villalpando died hours later at a local hospital. *Id.*

Plaintiffs Martha Anjelica Romero,[1] Maria Estela Villalpando, and Ruben Garcia Diaz (collectively, "Plaintiffs") filed suit under 42 U.S.C. § 1983 against the City of Grapevine, Clark, and Eddie Salame, the Grapevine Police Department Chief, for violation of Garcia-Villalpando's Fourth and Fourteenth Amendment rights. Plaintiffs based their claims on Clark's use of deadly force and his failure to provide medical treatment to Garcia-Villalpando. Plaintiffs also alleged that the City and Salame failed to train officers in the use of deadly force and the provision of medical care to gunshot victims and inadequately screened Clark prior to hiring him. Plaintiffs further claimed the City, Clark, and Salame conspired to deprive Garcia-Villalpando of his constitutional rights in violation of 42 U.S.C. § 1985. Lastly, Plaintiffs asserted causes of action under the Texas wrongful death and survival statutes, Tex. Civ. Prac. & Rem. Code §§ 71.002, 71.021, and sought punitive

---

[1]Romero brings this action individually and as the representative of the Estate of Ruben Garcia-Villalpando and as next friend for minors Eduardo Garcia, Keila Garcia, and Abdiel Garcia.

damages and attorney's fees. The City, Clark, and Salame moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Plaintiffs' claims. *See* Defs.' Mot. to Dismiss [23]. The Court dismissed Plaintiffs' section 1983 claim against Clark based on indifference to Garcia-Villalpando's medical needs. *See* Order, May 2, 2016. The Court also dismissed the section 1983 claims against the City and Salame. *Id.* Finally, the Court dismissed the section 1985 claims and the wrongful death and survival claims against the City, Salame, and Clark. *Id.*

Thus the only remaining claim is the Plaintiffs' excessive force claim against Clark. Clark now moves for summary judgment claiming he is entitled to qualified immunity. *See* Def.'s Mot. for Summ. J. [35]. The Court agrees.

## II. THE RELEVANT LEGAL STANDARDS

### *A. The Summary Judgment Standard*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. The Qualified Immunity Standard

"Qualified immunity is a defense available to public officials performing discretionary functions ' . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas*

*Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Because qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173, 173 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that it does not apply.[2] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). In the summary judgment context, courts "no longer [permit the plaintiff to] rest on the pleadings" and, instead, consider the evidence in the record in the light most favorable to the plaintiff. *McClendon*, 305 F.3d at 323 (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

---

[2]Contrary to the Plaintiffs' statement in their response, the burden on summary judgment, in the context of qualified immunity, is upon the plaintiff. *See* Pls.' Resp. to Mot. for Summ. J. ("Pls.' Resp.") 19 [46] ("The defendant's burden at the summary judgment is to establish, as a matter of law, that the conduct of Officer Clark was objectively reasonable and that no other reasonable officer, under the same circumstances, would have reached a different course of action.").

In accordance with the *Saucier* test, the plaintiff must demonstrate a genuine issue of material fact: "(1) that the defendants violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable." *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992)). Stated more simply, to resolve a public official's qualified immunity claim, a court must consider two factors. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.*

"The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 235. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### III. Clark is Entitled to Qualified Immunity

Plaintiffs claim that Clark used excessive force in violation of Garcia-Villalpando's constitutional rights under the Fourth Amendment. But the Plaintiffs fail to submit evidence that Clark's conduct was unreasonable. Because Clark's use of deadly force was objectively reasonable under the circumstances, he did not violate Garcia-Villalpando's rights.

Garcia-Villalpando had a right to be free from excessive force. At a general level, it is clearly established law that an individual has a right to be from excessive force. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). But at a more particularized level, it is well

ORDER – PAGE 7

established in this Circuit that "deadly force violates the Fourth Amendment *unless* 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others[.]'" *Bazan ex rel Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Garner*, 471 U.S. at 11) (emphasis in original). Here, the Plaintiffs do not raise an issue of fact that suggests Clark violated Garcia-Viallalpando's right. The Plaintiffs fail to submit evidence to rebut and create an issue of fact as to whether Clark was in reasonable fear for his safety or the safety of others when he shot Garcia-Villalpando. *See Flores*, 381 F.3d at 402 (noting whether officer reasonably perceived a threat of danger is a question of fact). Because the evidence shows Officer Clark had probable cause to believe that Garcia-Villalpando posed a threat of serious harm, his conduct did not violate Garcia-Villalpando's right.

An excessive force claim requires proof of "(1) an injury, (2) which resulted from the use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable." *See Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) (internal quotation marks and citation omitted). It can hardly be argued that the first prong is not satisfied. In this case, it is clear that Clark employed deadly force by firing his gun at Garcia-Villalpando. *Gutierrez v. City of San Antonio*, 139 F. 3d 441, 446 (5th Cir. 1998) ("[G]uns represent the paradigmatic example of 'deadly force' . . . ."). Thus, the Court considers only whether the force was excessive to the need and unreasonable.

"An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others."

*Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citation omitted). "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). "This is an objective standard: The question is not whether the officer actually believed that the suspect posed a threat of serious harm but whether a 'competent officer could have believed' as much." *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (quoting *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777 (2015)). When evaluating the objective reasonableness of an officer's conduct, courts must "pay careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 276 (5th Cir. 2015) (internal quotation marks and citation omitted). Courts should "make 'allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). Finally, when evaluating an officer's use of force, courts must view the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Plaintiffs contend that the Court's reasonableness inquiry is limited only to the circumstances at the moment of the threat. *See* Pls.' Resp. at 2. It is true that when the facts leading up to the deadly force are disputed, Courts focus on whether the Officer was in danger at the moment of the threat. For instance, where officers are charged with creating the situation that ultimately lead to danger from which they need to use deadly force to protect themselves, the Fifth Circuit has held that the focus should be on the reasonableness of the deadly force at that moment. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) (noting "regardless of what had transpired up until the shooting itself, [the decedent's] movements gave the officer reason to believe, at that moment, that there was a threat of physical harm."). In *Young*, relied upon by the Plaintiffs, there were allegations that the officer did not approach the suspect using proper police procedures. *Young v. City of Killeen, Tex.*, 775 F.2d 1349, 1352 (5th Cir. 1985). In that case, the Fifth Circuit limited the inquiry to whether there was reason to believe there was a threat of physical harm, despite the officer's conduct leading up to the danger. *Id.* Likewise, in *Rockwell*, also relied upon by the Plaintiffs, the Fifth Circuit rejected the argument that they should consider circumstances surrounding the officer's conduct, in that case the forced entry, "which may have led to the fatal shooting, in evaluating the reasonableness of the officers' use of deadly force." *Rockwell v. Brown*, 664 F.3d 985, 992 (5th Cir. 2011). Accordingly the Court "must consider all of the circumstances leading up to that moment, because they inform the reasonableness of [the officer's] decisionmaking." *Mendez*, 823 F.3d at 333.

Here, the undisputed facts on the record demonstrate that Clark's conduct was objectively reasonable. First, Garcia-Villalpando evaded arrest and led Officer Clark on a car chase on the highway, a felony offense. *See* TEXAS PENAL CODE § 38.004. After Garcia-Villalpando stopped his vehicle, he repeatedly ignored Clark's instructions. Clark told Garcia-Villalpando to keep his hands out the window. Garcia-Villapando pulled his hands back in twice. Clark told Garcia-Villalpando to remain in his vehicle. Garcia-Villalpando did not. After he exited the vehicle, Clark told Garcia-Villalpando to keep his hands up where he could see him. Garcia-Villalpando twice put his hands down by his waist. Clark told Garcia-Villalpando to stay by the back of the car. Garcia-Villalpando advanced toward Clark. As Clark shouted instructions, Garcia-Villalpando repeatedly ignored him. Garcia-Villalpando was clearly agitated, uncooperative, and advancing toward Clark, creating a volatile, violent situation. *See DeLuna v. City of Rockford*, 447 F.3d 1008, 1011–13 (7th Cir. 2006) (finding officer's use of deadly force objectively reasonable where suspect repeatedly ignored officer instructions and continued approaching officer); *Blossom v. Yarbrough*, 429 F.3d 963, 967 (10th Cir. 2005) (holding officer's use of deadly force objectively reasonable where confrontational suspect "advanced on [officer] in what reasonably appears to be an effort to get his weapon").

Moreover, the situation unfolded on the shoulder of a highly trafficked exit ramp, which limited Clark's ability to retreat. Clark offers evidence that Garcia-Villalpando advanced toward him until Clark had backed up to the outside rearview mirror of his police car. *See* Clark Dec. ¶¶ 19, 23. Clark further submits photographic evidence to show the

estimated distance that Garcia-Villalpando advanced toward him and confirm Garcia-Villalpando forced him to back up. *See* App. to Mot. for Summ. J. Ex. A [37-1]. Not only did the location limit Clark's ability to retreat, it added to the potential danger facing Clark. As Garcia-Villalpando approached Clark, a reasonable officer would be concerned that Garcia-Villalpando could push him into oncoming traffic. Clark submits evidence he could feel the vibration of the passing cars, as well as the wind generated by the passing cars. *See* Clark Dec. ¶ 13. The video evidence shows numerous cars passing Clark and Garcia-Villalpando in the right lane while the situation unfolded.

Based on the evidence submitted, Clark did not know if Garcia-Villalpando was armed, but it was objectively reasonable to believe he might be armed. *See* Clark Dec. ¶ 20. Before he exited the vehicle, and in disregard of Clark's instructions to remain in the car, Garcia-Villalpando placed his arms back in the car, during which time he could have been arming himself. *See Ontiveros*, 564 F.3d at 385 (noting that the Fifth Circuit has "upheld the use of deadly force where a suspect moved out of the officer's line of sight and could have reasonably been interpreted as reaching for a weapon."). Previous cases confirm that where a suspect refuses orders to keep his hand in sight, it is reasonable for the officer to suspect he might be armed. *See, e.g.*, *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011) (noting that where suspect reached down for two to three seconds before exiting the vehicle and led officers on a high speed chase immediately prior to the incident it was objectively reasonable for officers to believe the suspect was armed); *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991) (holding it was objectively reasonable to use deadly force where a

suspect repeatedly refused to keep hands raised and "repeatedly reached down in defiance of [Officer's] orders"). Once out of his vehicle, Garcia-Villalpando repeatedly lowered his hands, placing them near areas where he could have been concealing a weapon. *See* in-car video recording 6:34:05 (waistband), 6:34:13 (waistband), 6:34:16 (hat), 6:34:44–6:35:00 (hat). Nor must an officer wait until they know a person is armed before applying deadly force. *See Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016) ("we have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety."). While Garcia-Villalpando ultimately was unarmed, the Court refuses to apply the "'the 20–20 vision of hindsight' to judge the reasonableness of [the officer's] use of force." *Mace v. City of Palestine*, 333 F.3d 621, 624–25 (5th Cir. 2010) (quoting *Graham*, 490 U.S. at 396).

      A reasonable officer on the scene at the time could have easily drawn the inference that Garcia-Villalpando, who was knowingly moving toward an armed police officer, clearly agitated, and disregarding the officer's orders to stay where he was and keep his hands above his head, meant to injure, attack, or disarm the officer. Moreover, while Clark submits evidence that his conduct was reasonable, the Plaintiffs do not submit any evidence on summary judgment to contradict or rebut Clark's evidence that his conduct was reasonable. At best, the Plaintiffs only attempt to re-characterize the evidence already presented by Clark. Thus, the Court concludes that Clark had probable cause to believe that Garcia-Villalpando posed a threat of serious bodily harm. His use of deadly force was objectively reasonable under the circumstances. Because Clark did not violate Garcia-Villalpando's constitutional

rights, Clark is entitled to qualified immunity and the Court grants summary judgment in favor of Clark's section 1983 claim.

## CONCLUSION

Accordingly, the Court grants Defendant Clark's motion for summary judgment.

Signed January 19, 2017.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 14